The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oh yay, oh yay, oh yay. All persons have any amount of form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admised to give their attention, for the court is now sitting. Godspeed to the United States and this Honorable Court. All right, thank you. We'll open the case. Well, how many counsel we have here? I think we should just have two, Mr. Brown and Mr. Green. All right, we'll call the case of Brown Enterprises v. Affiliated FM Insurance and Mr. Brown. I don't know if you're related to David Brown or not. I am not, Your Honor. Okay, so this is just a coincidence. We'll hear from you first. Thank you, Your Honor. And good morning, Your Honors. If it pleases the court, my name is C. Thomas Brown. I am with Silver and Brown. I'm counsel for David S. Brown, but not related to David S. Brown. This is an appeal involving an interpretation of a first-party insurance policy, and as such, it's reviewed de novo by this court. First-party insurance, as the court is aware, is a contract containing a promise by an insurer to pay its own insurer if there's a non-excluded loss to covered property. In this case, we have two causes of loss, both of which are covered. We're not talking about excluded losses. Both flood and broken water main are covered by this policy. The insurance policy in this case is 81 pages long and is located in Joint Appendix 1126 through 1207. Mr. Brown, you just said something that probably goes to the heart of my problem with this case, that you seem to make a big distinction between water coming from the broken water main and water coming from the rain flooding down. The combined water, you allege, caused the damage to the foundations of your two establishments. From what I can see, the policy defines flood to include both. It basically includes overflowing water on the areas where water is not normally covered, whether caused by rain or man-made or whatever. Explain to me why it's important to distinguish between water coming from the broken main and water coming from the rainwater draining. Well, two issues, Your Honor. The first is the efficient approximate cause, and here the efficient approximate cause, according to William Barnes, who's the GOP. Please answer my question. In terms of the policy, as I understand the policy, if a truck runs down a fire hydrant and the fire hydrant floods for two days onto a neighboring property and damages the property, that's a flood under the policy. And the policy defines flood whether it's caused by man-made devices, whether it's caused by nature. It's a broad statement. It's a water, unwanted water, overflowing water. And so even you look at the dictionary, it fits it, your policy definition is even broader. And so the question I have, what difference does it make for the argument that where the water came from? You suffered water damage. Water damage is flood. And the question then is how does the policy handle that? There are two issues, Your Honor, and let me unpack those a little bit. When we're looking at flood in the policy, number one, you talked about the policy definition of flood. If we look at the sublimits, because this is a the sublimit, when it defines flood as a sublimit, does not use the bolded term flood. That is, when it uses a term of art throughout this policy, and if you go to the sublimits or Joint Appendix 1134, the term flood is not bolded. Okay, so it doesn't reference the policy definition of flood. It does bold the term annual aggregate, which is policy definition. It does bold the term occurrence, which is a policy definition. But the term flood... That doesn't gain you very much because the policy doesn't embolden unnamed locations. It doesn't cover errors and omissions, off-premises, service interruption. All of those are defined terms. So you gain nothing from the notion that... Understood, Your Honor. I'm pointing that out because that is one issue in the case. Second issue is this, Your Honor. If we read the definition of flood, and we got to read the definition in total. That's the key. Well, what does capital letters have to do with it? Well, when this policy uses throughout this policy, you'll see capital letter, not capital letters, they're bolded, Your Honor, bolded. You'll see bolded terminology used throughout the policy. Every time a bolded term is used... Does the policy explain what the bolding is? Excuse me? Does the policy explain what the bolding letters mean? I don't think it expressly does that, Your Honor. However, it does throughout the policy use... Well, maybe if I could work that in there somewhere. In fact, Your Honor, even if we look at the term flood, if we go to the definition of the term flood, and that is found at... Let me see, Your Honor. 1191. 1191. You'll see... Okay, hang on. ...the water flowing from them and so forth. Let's start with the very first line. It says flood means flood, all right, and then has a list of terms. And it says regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any sequence. So flood, what it does is a flood remains a flood regardless of whether wind caused the flood, whether the flood was impacted by some other cause. Flood stays flood, but it doesn't turn the other cause into a flood. It's not a cause, but we're not causing a cause. We're looking at the definition of flood, and you suffered water damage, which was, you alleged in your complaint, caused by flood. It's nothing you allege in your complaint. Your damage was caused by flooding. Now, what caused the flooding would fall within natural or man-made bodies of water. But, Your Honor, a broken water... Excuse me, sir. Excuse me just a minute. And the policy defines the floodwaters as those that are natural to property flooding. In other words, unwanted water overflowing or breaking the bounds. Now, if you look in the dictionary, that's exactly what the dictionary says. It says overflowing of water, especially over a land that's normally dry. Now, the question I have is we're not talking about the cause at this point. We're causing what is a flood and whether your water damage is flooding. The water from the broken water main, Your Honor, was never surface water. Surface water is a flood. What difference does that make? It's flooding. Flooding is unwanted water, overflowing water from whatever source. Your Honor, not all water is flood water. No, it has to overflow, and it has to overflow onto places that are normally dry. That's correct, Your Honor. And a broken water main is not surface water. It's not rising water. It doesn't have to be surface water. I'm just looking at the definition of flood in the policy. You're not gaining much traction because the flood is defined in the common sense term. The policy wants to make clear that it doesn't matter where the water comes from. It's unwanted water over what is normally dry land that causes damage. Your Honor, it's over dry land. And if we look at the list, Your Honor, everything in this list is a surface water event. That is waves, sea storms, storm surge, rising water, surface water. In that list where it says flood means flood, is that where you are? Yes, Your Honor. Right following flood means flood. So flood means flood, and then it has semicolon, surface waters, and it's not that. Rising waters, it's not that. Storm surge, it certainly isn't that. It's not sea surge, wave wash, waves, tsunami, tidal water. The release of water, it's not a release. It's not above ground, Your Honor. It's not rising, overflowing, or breaking. The water came up over the ground and channeled down the street from two sources. From the rainwater flowing off and from the broken main. And that water came and hit the foundations of your properties, washed out the soil, and damaged the foundations. But by the time it got to your property, it was all on the surface. No, Your Honor. Actually, none of it was on the surface by the time it got to our property. A large channel formed in front of the building. That is, it washed out half the street and the entire sidewalk. And the pictures were taken from people standing above the ground, looking into the eroded portion of the street facing the property. Now, that's not flood water? Your Honor, it was water that fell into a channel. The water main broke one store up in front of our two buildings. It washed away underground the soil. The soil collapsed, the sidewalk collapsed, the street collapsed, and it created a channel. That channel is what allowed the water to reach the foundations of these two buildings. The water from the storm, the water main break, never made it to the surface. Our expert, Your Honor, said, look, without the water main break, we have no damage. He points to the 2018 flood, a flood that happened two years later. No water main break, no damage at all. It was a bigger storm, a bigger flood. And, Your Honor, that's- Could I ask you this question? Assume that whether it's bouldered or not is not persuasive. And I think Judge Niemeyer has underscored the fact that you have a plain language construction problem based on that definition, assuming that applies. Don't you also have a problem in addition to that with respect to the regardless clause establishing within the trade is what's known as the concurrent causation clause? And as I understand it, at least in Maryland, as the district courts in Bow, Hamilton Jewelry, and McWhorter have construed almost identical clauses as establishing concurrent causation. I read those cases. Those clauses are almost identical to the one here. And I'm having a hard time following your argument that somehow this is different than that. So set aside the kind of the plain language argument you're making. You still have this problem. And I don't follow your argument that this is not an anti-concurrent causation clause. Judge Cullen, and this is where it's important. The two causes here, and let's just call them cause A and a flood. But the two causes are both covered. So if the flood was excluded, the anti-concurrent causation language would do exactly what you said. That is, a flood remains a flood even if some other cause intervenes. Okay, for example, let's say wind. You're hypothetical about this, the hurricane wind causing the storm surge, and then both contributing to the damage. Correct, Your Honor. So wind's covered, flood's not. But flood remains a flood regardless of the wind. The wind doesn't change the nature of flood. And wind doesn't become a flood. But under this language, the wind doesn't become a flood. That is, what this says is flood means flood regardless of any other cause or event. And that has very, it's very effective in an anti-concurrent when flood is excluded. Here, Your Honor, flood is covered. Flood's covered, broken water main are covered. They're both covered events. The problem is, under this policy, we're dealing with sublimits. What sublimit applies? The policy tells us what happens when two deductibles apply to a single occurrence by two different causes. It doesn't tell us what happens when two deductible, excuse me, two sublimits apply to a single occurrence. Can you answer my question specifically, though? How is this causation, this regardless cause, different than the one that District Judge Motz considered in Bow, the clause in Hamilton Jewelry, and the clause in McWhorter? Because in those clauses, Your Honor, it was an exclusion. And they weren't turning the second covered event into a flood. They were just saying the flood doesn't change its nature as an excluded event because of a concurrent cause. But doesn't your argument, I mean, essentially render that regardless clause as surplusage? I mean, a flood is a flood, right? It stops there. Well, that's what it says. It's flood is a flood, semicolon. Now, flood, cap, hold it, is a flood. And I think what it says is, Your Honor, we don't care if some other cause or event caused the flood, when, or let's say a dam breaks because of corrosion. The flood still remains a flood, despite the fact that another cause, which is covered, would create coverage under the policy. And a sewer backup is a flood. If the sewer backs up so the water goes over dry places, it's a flood. And the damage caused by a backup of a pipe that's plugged up is a flood. If it floods onto the surface, I would agree, Judge Niemeyer. Of course. Because a flood is the inundation of normally dry land by surface water. And that's, if you look at this, that's typically what a flood is. This is a broken water main, subterranean, completely underneath the ground. Your Honor, the water- It's not completely. The picture is the water surfaces. As a matter of fact, you allege it. It's all throughout the testimony, the experts, the water combined from the water main and from the rain, combined and pounded the foundation, washed out the street. And that's all on the surface of the street, digging that channel. No, Your Honor. Below the surface of the street. That's the problem. Oh, so the street stayed holistic and the water got it from underneath? Well, no. The street collapsed, Your Honor. The street collapsed. Okay, and then where'd the water go? Then the water went into the channel that was created by the broken water main. So, Your Honor, in the 2018 storm, there was no broken water main. Street didn't collapse. Water runs down the street. There's no damage to the two buildings. Well, you had a flood. You just didn't have any damage. We didn't have any damage in the exact same- Let's say you had a flood again and you had damage. The first time we had damage, Your Honor. I see my time is up, but- Right. All right. You've got some time on rebuttal. Why don't we hear from Mr. Green? Good morning, Your Honors. Bryant Green. May it please the Court. Bryant Green on behalf of the Affiliated FM Insurance Company, and I'm here today to ask this Court to affirm the District Court judgment and apply the plain and unambiguous terms of the policy. Nothing more and nothing less. This Court should affirm the District Court's judgment for two reasons. One, the policy supplement for floods to unnamed locations caps this loss at $50,000. And two, there was only one occurrence here. Interestingly, in this case, after having enjoyed being rescued from the application of a specific flood exclusion for property that's not even listed on this property, this policy in the first place, David S. Brown seeks to have its cake and eat it too by avoiding the limitations applicable to the express terms under which it claims coverage. Now, initially, we focused our attention at page 1134 of the Joint Appendix. And the question that I would submit to my colleague is, if the $50,000 supplement doesn't apply here, when does it apply? There could be no clearer case as to when it does apply. And interestingly, I'm hearing for the first time today that this isn't a flood because it's not in bold. That argument wasn't presented to the District Court. Rather, David S. Brown argued to the District Court that the flood sublimate does not apply because all of the Arizona missions, off-premises service interruptions, unnamed locations, and supply chain coverages must apply together simultaneously. Apparently, David S. Brown has abandoned that argument now. And we see for the first time that because the language isn't bold. But what we haven't talked about yet is just above that, in the third paragraph, it says, when a limit of liability applies to a location or property, such limit of liability will be the maximum amount payable for all loss or damage. Additionally, the term annual aggregate is bolded. And it says the phrase annual aggregate means the company's maximum amount payable during any policy year. That's regardless of how many floods, how many contributing causes. And we just saw a holding to that effect in the New York University versus Factory Mutual case. In there, it was a claim by the insureds resulting from Superstorm Sandy. And they incurred upwards of a billion dollars in property damage. And the insurer, an affiliate of my client, affiliated FM, applied a sublimate just like the flood sublimate here. And the court in that case, they said, the clear language is dispositive in FM's favor. Even if the faulty workmanship permitted floodwaters to wreak havoc on NYU's facilities, the resulting losses fall within the policy's definition of flood. The exact same logic applies in this case. You could even just extract the words NYU and insert David S. Brown and the exact same analysis would apply. And that was just affirmed in July by the Second Circuit Court of Appeals. The other point that I want to make is there's been an assertion that this policy specifically covers flood. And that's true with an asterisk. This is a large property policy that covers, I believe it's three quarters of a billion dollars. And in order to claim that three quarters of a billion dollars, you have to show, one, that there was a loss to a piece of property covered under the policy, and two, that the loss was not excluded. Now, the policy does contain an exclusion for flood. You find that at page 1163 of the Joint Appendix. And there's been no assertion for a claim under the all-risk coverage because, one, this specific property isn't listed on the declarations, and two, the flood exclusion would apply to the all-risk coverage. Now, the policy also has several additional property damages coverages, and those are at page 1158 of the Joint Appendix, where certain classes of coverages are brought back in. And to the limited extent those coverages conflict with the exclusions of the policy, the exclusions don't apply. So here there are two applicable exclusions. One is, or two applicable coverages, 115 for flood at page 1163, and two unnamed locations at 1169. Now, independently, by themselves, there's no coverage under either one of those property because, for instance of flood, it does negate the flood exclusion, but it's still not a named location under the policy. Now, two, for unnamed location, the policy brings back a certain class of property. And the purpose of these kind of coverages are, we recognize that David S. Brown is a large property developer, and they don't need to go straight from the closing table when they buy or sell a property to their insurance broker and incur the risk. So we provide unnamed locations to some extent, but only when those two coverages combine do you get the coverage that David S. Brown is seeking in this litigation. Now, in order to accommodate the risk that, one, affiliate is insuring properties it doesn't even know about, and two, it's doing so for flood, it does so at a reduced limit. And you see that at what we've been discussing here at 1134, the sublimits. Moving on to the actual definition of flood, my opponent suggests that the regardless language actually limits the definition of flood as opposed to expands it. And I think Judge Cullen hit the nail right on the head referring to the anti-concurrent causation clause. In fact, I'm impressed that you cited the Hamilton jewelry case that was decided after our briefs just recently. But what the anti-concurrent causation in this definition says is all water losses are going to apply to this loss. And we could get into a high-minded philosophical debate about what is a flood, but we don't even have to do that here. I'd note that at pages 18, 25, and 30 of David S. Brown's brief, and also in the reply, he says 18, 25, and 30 of the brief, and also in the reply, he says the entire loss was caused by the water main break and not by flood. That is the exact opposite of what all the testimony has been in this case. His own expert says, quote, the severe erosion was noticed concurrently with general flooding. General flooding. Similarly, the same expert says there was a concurrence of two events. And at page 816, the question was, question, okay, so it's water main combined with flood that caused the foundation walls to fail. Answer, yes. That is the plaintiff's own expert. That actually one of two experts, the other expert, Scott Bradley at 1405 of the appendix, says sitting here today, my opinion is that it was a combination of water from the flood and water from the water main. There's no dispute here that this property was flooded. In fact, Carol Brooke Brown, the managing member of the two LLCs at issue in this case, was posting on the internet saying that in 2016, her commercial investment properties on Main Street in the historic center of Ellicott City were completely destroyed by flood. And that's at 657. So we don't even need to get to the question of parsing apart the plain and unambiguous language of this policy, even though I'd submit that that is also dispositive and affiliate its favor in this case. The plaintiff's witnesses themselves can see that this is a flood. When there's a flood, even if it combines with other losses, the annual aggregate is $50,000. And then one point I just did want to address, even though it didn't really come up in my opponent's argument, is definition of occurrence. What I would submit to the court is that the definition of occurrence in this case has three elements. One, there has to be all loss or damage. Two, it has to arise out of or be caused by. Three, an event of physical loss. Specifically with the second element, the words arising out of and caused by are separated by the disjunctive or. So if occurrence is a synonym for cause as the plaintiff submits, that would mean the arising out of is superfluous. It doesn't exist. Now, in the briefs, there's been discussion of the World Trade Center case. That's probably the most popular case on number of occurrence issues. Mr. Green, if we find that the aggregate sublimit in the flood definition applies, isn't that determinative? I mean, do we need to reach the issue of whether there's one occurrence or two, like the district court did? No, you don't. You don't. The supplement is dispositive. But it is also, for the reasons stated in the brief, affiliated position that there was only one occurrence in this case as well. But I don't believe you must reach that decision in order to rule them in affiliates' favor. Truly, that's all the points that I've prepared for today. I'm comfortable submitting on the brief. Thank you. Mr. Brown? Let me start in reverse order. I'd point you to the Joint Appendix 1391, which was the testimony of William Carnes, the only geotechnical engineer, who testified. He was asked, without the damage caused by the water main, the flood flow would have been channeled to the middle of the street. Did I read that? I was reading from his opinion. I said, what did you mean by that? He says, answer. It means that without the water main break, without the water main break, which destroyed the equilibrium of the soil against the foundations, the flow would not have been channeled against the foundations, and subsequent damage that was observed in 2016 would not have occurred. And I said, let me ask you this way. Had there been no water main break in 2016, would the damage that you observed to 8227 and 8231 have occurred, the extensive damage? The answer is no, it would not have occurred. So without the water main break, there would have been no damage to this building. And your honor... I think everybody seems to concede that, maybe, but the question is whether that's relevant to anything. In other words, the question is, water pounded the foundation, and water washed away the street, washed away the sidewalk, pounded the foundation and caused damage. The pictures show enormous vacancy in front of the foundation with all the soil and sidewalk and street washed away. And it was done by water. And it was done by water caused by two sources, the rainwater and the broken main. That's what everybody seems to agree on, right? That's correct, your honor. So now the question is, is that combined water pounding the foundation, washing away the soil, the sidewalk, washing away the street, and pounding the foundation, is that flood damage? And your honor, I would submit it. It's not flood damage because it is not surface water. This was all subterranean water. Let me go at it this way, your honor. If we look at the sublimit, there's no question, sublimits apply. The policy includes surface water, but it also includes water from a backed up sewer, which is subsurface water. So that isn't key. The key is whether we have water causing the damage when the water is normally not, it's normally a dry place.  Your honor, if the backup of the sewer results in sewage being ejected, water being ejected above the surface, I agree, that becomes surface water, it becomes a flood. Well, this came up to the surface too. That's all the pictures show, the water, the whole wash away, the foundation's exposed, the street's gone, sidewalk's gone. The water had to come down and wash all that away, pounding the foundation. And it resulted- Everybody, whether it's newspapers, laymen or experts, all call that a flood. It resulted from the, if you will, the water main break itself. But let me go at it this way. The sublimits, and by the way, your honor, there is a sublimit that applies to unnamed properties. It's 100,000, I mean, a million dollar sublimit. That's the one that we say applies. Insurance company says, no, it's- Well, in order to get that, you have to conclude that there was not a flood. Well, your honor, that's what the district court concluded. She said, remember that sub- Policy says that. The sublimits are on a per-occurrence basis. And the trial judge said, look, I disagree. It's the, the occurrence was not flood. The occurrence was not broken water main break. The trial court, I just said, the record reflects one discrete event of physical loss or damage. The foundations of the main street property were, was destroyed by water. Two causes appear by all accounts to have contributed to the one discrete event. The water main break, which created or exacerbated a channel near the main street and the flood watch. Having concluded that the occurrence was not flood, was not water main, the result is under this policy that you apply the sublimit that applies, which would be the unnamed property, not the flood. The flood may have been the cause of the occurrence, but the sublimit is defined by the occurrence, not the cause of the occurrence. And your honor, I would suggest that the, the unlike the deductible section of this policy that says, look, if we have two deductibles that apply to one occurrence. What if an airplane hits the top of a dam, knocks out the dam, the airplane negligent pilot or whatever, knocks out the dam, the dam flows down and floods properly. Is that a, is that a flood or is that an airplane accident? Well, remember your honor, if they're both covered, just like in this case. No, it's important to categorize it because. It's a flood because it's all surface water. You'll have to let me finish the question, okay? Sorry, your honor. It's not a question of, it's a question of characterization, whether the occurrence is an airplane accident or flood damage. And if it's flood damage, it fits one portion of the policy. If it's an airplane accident, it fits another. If the airplane instead, it hit the house, it's not a flood. If it hits the dam and causes the water flow, I assume you would say it's a flood when it destroys the houses in the establishment. Your honor, I see my time's up. Would you like me to answer your question? Please do. Okay, I apologize. But yes, your honor, in that case, the broken dam would cause an inundation of normally dry surface, right? The regular land with what? It would be a flood. And it would be under the definition of flood in this policy. It would be covered because it's expressly one of the items that's listed, one of the itemized examples of flood. And that would be, it says, the overflowing or breaking of boundaries of natural or man-made bodies of water. That would be the breaking of a boundary of man-made dam, would be a man-made boundary. So your honor, I would just suggest that in this case, having found that the loss was not an occurrence of flood, was not the occurrence of water main break, trial court should have applied the unnamed property sublet. And that would be one million dollars? It's one million dollars, your honor. And would it be one million for each house? It would be one million for each house, your honor. The insurance company conceded that in their depositions. Okay, thank you very much. Yeah, as you both probably know, we would start practice to come down and greet counsel in the well of the court. Thank you for your arguments and wish you a good day and all the rest and invite you back. We do all of that. We just can't shake your hand. Thank you, your honor. I hope you come back and visit us. I had my first argument with you back in the 80s when you were sitting by designation, your honor. Oh my gosh. Thank you very much. Pleasure being in front of you, your honor. Yeah, very good. I was like, Judge St. Mark's been here a long time. He was there as a district court judge at that point, Judge Cullen. Mr. Brown, you've been a lawyer for a long time. Too long, your honor. I agree. Thank you.
judges: Paul V. Niemeyer, Robert B. King, Thomas T. Cullen